DAVID D. LIN
MICHAEL D. CILENTO*
LEWIS & LIN, LLC
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
Tel: (718) 243-9323
Email: David@iLawco.com
Email: Michael@iLawco.com
* admitted pro hac vice

JI-IN LEE HOUCK (SBN 280088)
STALWART GROUP
1100 Glendale Ave., Suite 1840
Los Angeles, CA 90024
Tel: (310) 954-2000
Email: jiin@stalwartlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN GRAUPNER; <br> BEN GRAUPNER INCORPORATED <br><br> Plaintiffs, <br><br> vs. <br><br> PATRICK OAKES; and <br> NATIONAL TAX EXPERTS <br>    Defendants. | Case No.: 2:20−cv−07004−JAK−E <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION** <br><br> [*Affirmation of Michael D. Cilento filed concurrently herewith*] |

Plaintiffs Ben Graupner ("Mr. Graupner") and Ben Graupner Incorporated (together as "Plaintiffs"), by their attorneys, pursuant to this Court's Order dated August 17, 2020, Dkt. 26 ("TRO Order"), respectfully submit this supplemental brief in furtherance of Plaintiffs' motion for a preliminary injunction.

## FIRST AMENDMENT CONCERNS

While Plaintiffs are likely to succeed on the merits of all of their claims (including their defamation and Lanham Act claims, which are made stronger by the additional evidence submitted herewith and as discussed below), Plaintiffs, in heeding the Court's First Amendment concerns in its TRO Order, respectfully elect to proceed with their preliminary injunction motion as to only Plaintiffs' Cal. Bus. & Prof. Code § 17525(a) cause of action ("17525 Claim").

This should relieve the Court of any First Amendment concerns, since the motion now clearly only seeks to prevent Defendants from registering and using domains that consist of Plaintiffs' full name, which Courts have held would not violate First Amendment rights since there are other less harmful (and less illegal) domain names that one can register to publish their opinions on.

While not many cases have dealt directly with this exact issue, two cases that have, and which have facts very similar to those here, are Randazza v. Cox, 920 F. Supp. 2d 1151 (D. Nev. 2013) ("Randazza") and Bogoni v. Gomez, 847 F. Supp. 2d 519 (S.D.N.Y. 2012) ("Bogoni"). In both cases, the District Courts ordered injunctions transferring the domain names from the defendant to plaintiff, where Plaintiffs were likely to succeed on their 15 USC § 8131(a) claims.[1]

As to First Amendment concerns, the Court is Bogoni noted:

> Although Defendant Cox argues that her free speech rights will be infringed if the Court issues this preliminary injunction (*See* Defendant Cox's Obj. to

---

[1] While Plaintiffs believe they now have evidence supporting a direct violation of 15 USC § 8131(a), Plaintiff's nearly identical claim under CA Bus & Prof Code § 17525 is even easier for Plaintiffs to show their likelihood of success on, since Plaintiffs win nearly every factor considered under the statute, as discussed more herein.

1  Injunctive Relief ECF No. 29 at 3), the injunction clearly does not implicate
2  Defendant's First Amendment rights. The injunction does not prevent Defendants
3  from publishing opinions on other blogs, but instead precludes her only from
4  registering or using domain names that consist of Plaintiffs' full names.
5  Therefore, the Court finds that no public interest will be injured by the issuance
6  of injunctive relief.
7  Bogoni, at 523.

## **LIKLIHOOD OF SUCCESS ON THE MERITS**

Even a cursory examination of the 17525 factors overwhelmingly shows that Plaintiff will succeed here (indeed, on the current papers, Plaintiffs likely win every factor besides (a) trademark rights, which arguably Plaintiffs could win, as noted by the Court in its TRO Order, and (j) deceiving voters).  Plaintiff unquestionably win all one factors:

(b) – the domains use Mr. Graupner's real name;

(c) – no prior use by Defendants;

(d) – no legitimate noncommercial use (or fair use);

(e) – the intent of the website is to "disparage" Mr. Graupner (and the sites now cause confusion because the sites resolve with no content but still appear in search results – compare to the Court's reasoning re: confusion on page 5 of the TRO Order);

(f) – the domains were put up for sale at an astronomical price of $8,888.00;

(g) – the Defendants created and registered the domains using anonymous contact information;

(h) – Defendants have registered multiple domains; and

(i) – No consent obtained;

*See* CA Bus & Prof Code § 17526.

In response to the Court's concern regarding Plaintiffs proceeding upon information and belief as to Defendants' registering of the domain names, Plaintiffs note the following:

1) Defendants' are now in default for not responding to the Complaint by August 28, 2020. *See* Cilento Aff. ¶ 3-8. Accordingly, the Court should deem the allegations in the Complaint as admitted;

2) Defendants Counsels have had several discussions with Plaintiffs' counsel regarding a resolution to the case, and have always assured that transfer of the domain names would not be an issue. *Id.* ¶ 5; and

3) As the Court rightfully pointed out, "information and belief" declarations and other inadmissible evidence may be considered by the Court in order to prevent irreparable harm before trial. *See* TRO Order, Page 8 citing *Flynt Distrib Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.1984); *Friedman Corp. v. Univ. Moulding Co.*, No. CV 11-10361 MMM (AJWx), 2011 WL 6817756 at *1 n.2 (C.D. Cal. Dec. 28, 2011).

## **IRREPARABLE HARM**

Plaintiffs rely on the irreparable harm argument made in their opening memorandum, specifically that Mr. Graupner has shown a potential loss of control over the goodwill and reputation of his name and business website warranting a finding of irreparable harm. See Super-Krete Int'l, Inc. v. Sadleir, 712 F. Supp. 2d 1023, 1037 (C.D. Cal. 2010) ("Plaintiff has demonstrated irreparable injury based on the threatened loss of prospective customers who would be diverted away from its website").

However, in response to the Court's reasoning that the sites being currently deactivated weighs against finding irreparable harm, Plaintiffs' note that (1) the cached descriptions still appear for the websites (*see* Exhibit B to the Cilento Aff.); (2) even if the descriptions were removed, the fact that the domains appear in search results but fail to resolve to content also hurts the reputation and business of Plaintiffs and further causes confusion as to if those domain namess are owned by Plaintiffs'; and (3) Defendants could at any point simply direct the domains to the

websites again at any point, with a few click of the button, and are not unlikely to do so given the contentious nature between the parties.

As the <u>Randazza</u> Court pointed out in finding irreparable harm:

> The Court is satisfied that allowing the defendant to continue operation of the Domain Names would produce an actual injury that would not be remediable after trial. Though the Web sites do not currently display content that might be deemed offensive or damaging to the plaintiff, the parties made clear to the Court during oral argument that the parties' relationship is, at the very least, contentious, and there is undoubtedly the potential for harm in the imminent future. Additionally, the mere fact that both Domain Names are spelled only with the plaintiff's name weighs quite heavily in favor of the plaintiff here; any time the plaintiff meets a new person, that person—or, for that matter, anyone the plaintiff already knows—will be just clicks away from visiting one of the sites run by the defendant. Even if the defendant never posts damaging material, the Court agrees with the plaintiff that the use of the plaintiff's name in the Domain Names "create[s] a likelihood of confusion as to the source, sponsorship, affiliation and endorsement of those sites."

<u>Randazza</u>, at 1159.

## **FURTHER EVIDENCE OF SPECIFIC STATEMENTS**

The Court rightly pointed out that Plaintiffs did not specify the exact quotes or attach any documentary evidence for some of the defamatory statements including "that Graupner and Tax Debt Group were 'acting as a front for American Tax Solutions.'" TRO Order, Page 4. This was because Defendants had changed the website before Plaintiffs or their attorneys had taken a screenshot of those particular statements, and Mr. Graupner did not want to misquote the statements.

However, funnily enough, while the websites remain inactive at present, a current Google search for "ben Graupner tax group" reveals a cached description for <benjamingraupner.com> with the old "front" language. *See* <u>Exhibit C</u> to the

4

Cilento Aff. The website description shows the notable opening line of "Ben graupner actually works as a front for the company American Tax Solutions."

Plaintiffs thus respectfully request the Court to consider this specific false statement made by Defendants on the websites in its analysis of the motion going forward.

## CONCLUSION

Based the foregoing, and for all the reasons contained in Plaintiffs' application in Dkt. 22, Plaintiffs requests that the Court grant Plaintiffs' motion for a preliminary injunction and, inter alia, transfer the domain names from Defendants control to Plaintiffs.

DATED this 31th day of August 2020.

        Respectfully submitted,

        LEWIS & LIN, LLC

        _____
        Michael D. Cilento*
        David D. Lin

        *admitted *pro hac vice*

        STALWART LAW GROUP
        Ji-in Lee Houck

        *Attorneys for Plaintiffs*